JACOB I. POLKOWITZ, PLAINTIFF-RESPONDENT, v. PAUL W. EWING, DEFENDANT-APPELLANT.

Submitted January 25, 1935—Decided April 11, 1935.

Before Justices LLOYD, CASE and DONGES.

For the plaintiff-respondent, *Jacob I. Polkowitz, pro se.*

For the defendant-appellant, *William D. Danberry.*

The opinion of the court was delivered by

CASE, J. The case comes to us after retrial following our earlier consideration reported in 12 *N. J. Mis. R.* 695; 174 *Atl. Rep.* 339.

The state of demand contains two counts, the first based upon a promissory note of $200, the second upon a so-called stipulation which is as follows:

"In consideration of the above named plaintiff entering into a stipulation with the defendant herein, wherein and whereby the said plaintiff-respondent has waived its right to have the appeal in this cause dismissed for failure of the defendant-appellant to properly prosecute said appeal, and in further consideration of the said plaintiff-appellee consenting to' a trial of this appeal on its merits before the above court, I, Paul W. Ewing, attorney for the defendant-appellant do hereby personally guarantee the payment of the judgment heretofore entered in this matter, in the event that the said judgment on a trial of the same on its merits, before the Middlesex Common Pleas Court, is reversed; but in the event that the said judgment is affirmed, then this guarantee is to be void and of no force and effect. A promissory note bearing date April 26th, 1933, will be given by the undersigned to the attorney for the defendant, said note to be for $200 and is given to carry out the terms of the above stipulation."

The state of the case, settled by the District Court judge, shows proofs of broader scope than, and in some respects variant from, those recited on the former appeal. William Weinberger, trading as William Weinberger & Company, had, by Jacob I. Polkowitz, his attorney, secured a judgment in a Small Cause Court against Margo Realty Corporation. An appeal to the Middlesex Common Pleas was taken by the

Margo Realty Corporation but was later dismissed for lack of prosecution. After the Common Pleas had rendered decision for Weinberger, and against Margo, Ewing, attorney for Margo, executed and delivered the above mentioned stipulation and note. Thereupon the appeal was reinstated, tried and decided for Margo and against Weinberger. The finding below was reversed. The payment called for by the note and the stipulation has not been made by Ewing, although plaintiff herein, attorney for Weinberger, has, in reliance upon Ewing's undertaking, paid the amount thereof to Weinberger.

The defendant herein, resting his case in the District Court without the submission of testimony, moved for a directed verdict upon the grounds (1) that the note was non-negotiable and was without consideration to support it and that the plaintiff failed to prove any consideration; (2) that there was no proof that the note was due and payable in accordance with the terms of the stipulation; (3) that the consideration, if any, for the note and the stipulation was illegal, void and contrary to public policy and that both the note and stipulation were therefore unenforceable. Judgment was awarded to the plaintiff, and defendant appeals.

It is unnecessary to consider more than the last ground. The general rule of law applicable to that contention has been stated by our Court of Errors and Appeals as follows:

"Where there is no statutory prohibition, the law will not readily pronounce an agreement invalid on the ground of policy or convenience, but is, on the contrary, inclined to leave men free to regulate their affairs as they think proper. Where, however, a contract is of such a nature that it cannot be carried into execution without reaching beyond the parties and exercising an injurious influence over the community at large, everyone has an interest in its suppression and it will be pronounced void from a due regard to the public welfare." *Brooks* v. *Cooper,* 50 *N. J. Eq.* 761, 767.

Ewing, attorney of record for a client against whom a judgment had gone, allowed the statutory period for perfecting his appeal to slip by and a judgment of dismissal to be taken. Chagrined by his predicament, he bargained with

the hostile party; and the bargain was, in effect, that the opponent promised to reinstate the appeal and Ewing promised that if, on the appeal, his client should succeed, he, Ewing, would personally pay the opposing party the amount of the reversed judgment, but if, on the other hand, the judgment be affirmed, Ewing was to pay nothing. Ewing was to win if his client lost and was to lose if his client won. The question is whether such a contract is against public policy. So stated, there seems little room for argument. In this case the client won. The question, however, is not what actually followed in the particular instance but what the tendency of such a practice is. Is it or is it not against the public interest that an attorney of record in a litigation may contract with the opposing side regarding a step in the cause in such fashion that he will lose if his client wins? Most men would hesitate to become the client under such circumstances; for the lawyer is subject to a double urge in divergent directions, one of which is towards a drain upon his own purse. The attorney has saved his face by reinstating the appeal; unenlightened self-interest whispers that he may save his money by losing the final determination.

Further, the steps in a court action are not and ought not to be subject to barter and sale. A litigant either has or has not the right of an appeal. His right is not a question of purchase. Weinberger had a complete right, we shall assume, to cause the appeal of the Margo Realty Corporation to be dismissed. He had the right also to withhold from pressing his advantage. But those steps were at his disposal because of the efforts of a sovereign state to accomplish justice between its subjects; they were not matters of commerce. Indeed Weinberger had, according to the uncontroverted proofs, exercised his right, moved for and obtained an order dismissing the appeal. He did not have the power to reinstate. That was something that only the court could do, and that the court assuredly would not have done if it had known the character of promise upon which the consent of counsel grounded. On the appeal the Common Pleas Court was not, as it supposed, trying the issue whether a debt was or was

not owing to Weinberger; what it was actually doing was to decide who was to pay that debt, Margo or the attorney who was in court representing Margo—an anomalous situation that came close to being a fraud upon the court.

The contract by its very nature extends beyond the parties and exercises an influence over the community at large, an influence that we deem to be injurious. The general public is interested in maintaining purity, as nearly absolute as possible, in the framing and disposition of litigated issues. A litigant ought not be subject to the disquieting apprehension that what appears to be a step in the cause taken of right in his behalf may in fact have been purchased by his attorney at a price that leaves the attorney, in the further progress of the suit, divided between opposite allegiences. That is what will happen if the agreement sued upon be pronounced legal.

We think that the consideration was illegal and void for the reasons, first, that it is against public policy for an attorney, to the knowledge and with the participation of the other contracting party, to be placed at odds with the interest of his client, and second, that it is against public policy for an opportunity to litigate to be made the subject of barter and sale. We believe that this conclusion is in full accord with, and indeed required by, the reasoning of this court in *Sharp* v. *Teese,* 9 *N. J. L.* 353, and *Smith* v. *Applegate,* 23 *N. J. L.* 352.

The judgment below will be reversed.