MURRAY B. STONE, ALEXANDER H. STONE, E. DAVID STONE, SARAH STONE AND ANNA L. STONE, CO-PARTNERS DOING BUSINESS AS STONE & STONE CO., APPELLANTS, v. WILLIAM STEINEN MFG. CO., A CORPORATION, APPELLEE.

Argued October 17, 1945—Decided January 24, 1946.

For the appellants, *Milton M. Unger.*

For the appellee, *Pitney, Hardin & Ward* (*Charles R. Hardin*).

The opinion of the court was delivered by

BODINE, J.  The appeal is from a judgment of the Supreme Court whose opinion is reported in 133 *N. J. L.* 16.  The judgment affirmed a determination in favor of the defendant in a case tried before the Circuit Court without a jury.  The findings of the learned trial judge are reported in 22 *N. J. Mis. R.* 353.  The defendant's counter-claim was struck but that is not inconsistent with sustaining the defenses interposed to the action.

The plaintiffs sought to recover two weekly installments of salary on the basis of $400 a week.  The parties to this action on December 31st, 1942, entered into a written agreement operative and effective as of July 1st, 1941, whereby the defendant employed the plaintiffs for a period of three years commencing as of July 1st, 1941, and ending June 30th, 1944, at a salary of $400 per week payable weekly.  The contract terminated a previous contract in which the plaintiffs agreed to assist the defendant in its dealings with the United States Navy Department respecting contracts for the manu-

facture of supplies. Contracts were obtained and payment was made until September 11th, 1943, when the payments stopped and this suit was brought.

Every contract negotiated by the United States Navy, including those procured by the defendant, contain the following provision: "Article 11. Covenant against contingent fees. The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through *bona fide* established commercial or selling agencies maintained by the contractor for the purpose of securing business."

It was the defendant's contention at the trial that the agreement of December 31st, 1942, was a modification of a contract of July 1st, 1941, whereby the defendant agreed to pay the plaintiffs commissions on such contracts as it might procure for the manufacture of materials for the United States Navy. Clearly, it was since the Navy was disallowing the commissions which were paid to the plaintiffs and were deducting the amount thereof from the payments which were being made to the defendant. It was hoped that the new plan would thwart the ruling and the salary would be allowed as part of the administrative expense.

The plaintiffs are partners. The partnership was composed of Alexander H. Stone, his brothers and their wives. Mr. Stone, for a number of years, was engaged in the mortgage business in Newark. He went to Washington in 1934 and was employed for a period of six years in the Federal Housing Administration. On November 20th, 1940, he commenced the business of being an alleged manufacturers' representative, but his firm does not seem to have been regarded by the Navy Department as a *bona fide* established commercial or sales agency. Such finding was concurred in by the

Circuit Court Judge. He points out in his opinion that the plaintiffs maintained no office in Washington save the residence where Alexander H. Stone lived and where the other partners visited from time to time. There was no consecutive clerical force and no usual office equipment.

It is perfectly apparent, as the Circuit Court found, that the first agreement calling for a contingent fee was illegal and that the change was made merely for the purpose of carrying out the original arrangement for commissions somewhat reduced in amount.

The learned trial judge, as his guide in determining the questions presented, accepted as law the statement made by Chief Justice Rugg in *Noble* v. *Mead-Morrison Manufacturing Co.,* 129 N. E. Rep. 669, 674: "The general principle fairly deducible from the decisions is that ordinarily no one factor is decisive in determining whether the contract concerning furnishing supplies to the government is void as contrary to public policy. Contingency of compensation upon success, percentage upon the amount involved in sales directly to the government, and the size of the fee, all are elements entitled to consideration. The words 'contingent compensation' in connection with a contract may be used either in an obnoxious or a harmless sense. The tenor of the contract may be such in connection with its setting as to stamp it with invalidity. If it bears any badge of fraud, either covertly or openly, it must be stricken down. The question of the legality of the contract in each case is to be determined by weighing all the elements involved and then deciding whether its *inherent tendency is to invite or promote the use of sinister or corrupt means to accomplish the end* or to bring influences to bear upon public officials of any other nature than the single one of genuine advantage to the government. If such is its tendency, it must be pronounced illegal. If that point is open to fair doubt upon all the evidence, its purpose must be left to the jury under appropriate instructions." (Italics ours.) That statement of the law finds support in 17 *C. J. S.* p. 573, § 212; p. 577, § 214; 12 *Am. Jur.* p. 703, § 202; p. 707, § 205; p. 711, § 207.

The question for our determination is whether the evidence supports the finding of fact that the contract in question had a tendency to invite or promote the use of sinister or corrupt means to accomplish the end.

As we before noted, the plaintiffs had no Washington office and no real clerical force. The work which Mr. Stone performed could have been done by any sales representative who was familiar with the details of the setup of government departments. He had no technical training and the work done was merely contact work with representatives of the Navy. The provision for the continuance of the contract, in the event of death of one of the partners, seems indeed curious if the contract contemplated continuance of work since two of the partners were women and not familiar with the business details at all. The provisions in the Navy contract against contingent procurement agreements is obviously wise. Such agreements tend to the corruption of the personnel of the Navy and have been very costly as experience has shown in past wars.

The trial court could find, as it did, from the evidence that the substitute agreement was a mere blind. The correspondence between the parties indicates that the purpose was to appease the Navy and insure payment to both of them. Obviously they were equally to blame, and hence the learned trial judge would not permit a recovery by one against the other.

We are not impressed with the reasoning in *Bradford* v. *Durkee Marine Products Corp.*, 40 *N. Y. Supp.* (2d) 448, nor with that in *Dodge* v. *Allison*, 13 *Fed. Rep.* (2d) 588; *certiorari* denied, 273 *U. S.* 774.

There is nothing in the case before us to indicate that there was any reason for the employment of the plaintiff firm other than the fact that they had been successful in procuring Navy contracts, whereas the defendant had failed so to do. The only reason for the employment was that the plaintiffs knew how to make contacts with the Navy Department, but this Mr. Stone stated required no special training. They were employed by several other concerns and the salaries were out

of all proportion to any work done. The employment had an inherent tendency to promote a corrupt means to accomplish the end. The evidence abundantly supports the findings.

The judgment under review will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, HEHER, COLIE, OLIPHANT, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ. 12.

*For reversal*—None.