## MOFFETT v. ARABIAN AMERICAN OIL CO., Inc.

No. 33, Docket 21709.

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1950.

Decided Nov. 6, 1950.

William Power Maloney, New York City, Davies, Richberg, Beebe, Landa & Richardson, Washington, D. C., I. Alfred Levy and Max Dorff, New York City (Raymond N. Beebe, Washington, D. C., of counsel), for appellant.

Hughes, Hubbard & Ewing, New York City (Joseph M. Proskauer, Rowland Stebbins, Jr., and Phillip W. Haberman, Jr., all of New York City, of counsel), for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The trial judge set aside a verdict in plaintiff's favor for $1,150,000.00, and entered judgment dismissing the suit on the merits. The reported opinion of the judge, D.C., 85 F.Supp. 174, sufficiently summarizes the plaintiff's complaint and the evidence. The judge's decision rested on two grounds: (1) There was no proof that plaintiff had performed the services for which he claimed compensation; (2) the agreement was against public policy. Since we agree with the judge as to the first ground, we do not consider the second.

 Plaintiff admits that, in order to recover he had to prove that, as a result of his efforts, the United States, as a condition of the loan it made to the British government, required that government to assume the budget requirements of the King of Saudi Arabia. The record contains no admissible evidence from which it can reasonably be inferred that the United States imposed such a requirement. We think the trial judge correctly summed up the evidence as follows: "It seems to me that plaintiff's evidence proved nothing more than that the President and also the Secretary of State were aware of the needs of the King of Saudi Arabia and were sympathetic; that the various methods to aid the King suggested by the defendant and also by the President were not possible, such as help through Lend-Lease or a direct loan, an advance on oil royalties, a sale of oil to the Navy and a purchase of oil in the ground from the King. These methods of helping the King being unavailable, all we have left is a *hope* by the President that the British 'can take care of the King'; a *suggestion* by Jesse Jones to the British representative 'that Britain *consider* providing King Ibn Saud with such funds as in its opinion were necessary to meet his requirements'; or the showing of the President's note by Jesse Jones to the British representatives, prior to closing the loan, with the *request* that the British Government furnish the King of Arabia with whatever funds it felt were desirable and necessary. Whether it be a hope, a request or a suggestion, it in no way approximates the claim of the plaintiff as set forth in his complaint and as urged on the trial."

There is one item of evidence which, had it been admissible, might conceivably have been sufficient: Plaintiff testified as follows concerning a conversation he had with Jesse Jones in September, 1941: "I talked to him about that letter and asked him if he would not give me another letter; that I understood that it was more or less a stipulation on the part of the President that the British were to do this, and he told me that the collateral loan had been concluded and that he had spoken to the British about it, and it was understood that they were to take care of the King, but he said he did not want to give me a letter without further talking to the President * * * ". But defendant's counsel moved to strike out the statement that "it was understood that they were to take care of the King," stating "that is no proof that there ever was such an understanding." The judge agreed, admitting this testimony, but for a limited purpose. The objection was well taken. The testimony was hearsay so far as it purported to report anything done or said by the British representatives.

Affirmed.