**BLACK INDUSTRIES, Inc. v. BUSH.**

Civ. A. No. 586–52.

United States District Court
D. New Jersey.

March 13, 1953.

Waddington & Tilton, Camden, N. J., George M. Henry, Philadelphia, Pa., of counsel, for defendant, for the motion.

Toolan, Haney & Romond, Perth Amboy, N. J., for plaintiff, contra.

FORMAN, Chief Judge.

The plaintiff, Black Industries, Inc., a citizen of Ohio, is suing the defendant, George F. Bush, a citizen of New Jersey doing business as G. F. Bush Associates, for breach of a contract. The defendant has moved for a summary judgment in its favor.

The complaint alleges as a first cause of action that the plaintiff, a manufacturer of drills, machine parts and components thereof and a purchaser of subcontract work from other suppliers, obtained an invitation to bid upon certain contracts with The Hoover Company upon three parts known as anvils, holder primers and plunger supports. The plaintiff assumed the task of obtaining a supplier of these parts and on about March 22, 1951, the defendant reached an agreement with the plaintiff to manufacture 1,300,000 anvils at a price of $4.40 per thousand; 750,000 holder primers at $11.50 per thousand and 700,000 plunger supports at a price of $12 per thousand, all of which were to be made in accordance with government specifications and in conformity with certain drawings. The plaintiff agreed to "service the contract", be responsible for all dealings with The Hoover Company and would be entitled to the difference between the defendant's quotations and the ultimate price. The Hoover Company agreed to purchase the parts from the plaintiff at a rate of $8.10

per thousand anvils, $16 per thousand holder primers and $21.20 per thousand plunger supports.

The complaint further alleges that after undertaking performance of this contract, the defendant failed to complete the order, which caused a loss of $14,625 to the plaintiff, for which sum, together with interest, the plaintiff demands judgment.

As a second cause of action the plaintiff alleges that pursuant to understandings between the parties, the defendant agreed to manufacture 525,000 plunger supports at a price of $13.20 per thousand, and 969,500 anvils at a price of $4.40 per thousand. Relying upon this the plaintiff accepted a purchase order from Standby Products Company, quoting a price of $23.20 per thousand for plunger supports and $8.10 per thousand for anvils. The defendant failed to comply with this undertaking, causing a loss to the plaintiff of the sum of $4,460.95 and interest thereon, for which the plaintiff seeks judgment.

Answering as to the first cause of action the defendant alleges his price quotations were tentative only, admits nonperformance but asserts that this was the result of strikes and the plaintiff's failure to perform, alleges that by a subsequent agreement plaintiff and defendant were each to receive one half the difference between the defendant's price and The Hoover Company's price, and asserts that he did not know the details of the plaintiff's agreement with The Hoover Company when he undertook performance. As to the second cause of action, the defendant denies the existence of the alleged agreement to manufacture for Standby Products Company, disputes the accuracy of certain of the plaintiff's allegations as to quantities or prices of the articles to be manufactured, and asserts that he did not produce the articles because Standby Products Company cancelled the order.

As separate defenses, the defendant states that the contract set forth in the complaint is void as against public policy, that it is void in that it violates the New Jersey statute of frauds, and that it is too vague and indefinite to be enforced. The defendant alleges that the plaintiff by the terms of one of the letters constituting the contract is entitled to receive compensation only out of money collected from its customers, and since the contract was cancelled by The Hoover Company, there is nothing to be collected and the plaintiff is not entitled to compensation. Finally, the defendant denies liability on the grounds of impossibility of performance.

The defendant now moves for a summary judgment in his favor asserting that the agreements alleged in both the first and second causes of action are void as being against public policy. The alleged contract covering production for The Hoover Company was set forth in a "memorial document" consisting of a letter dated April 13, 1951, signed by Mr. Franklin G. Gepfert of Black Industries and signed and agreed to by the defendant.

"G. F. Bush and Associates
Box 175
Princeton, New Jersey.
"Gentlemen:

"Re: The Hoover Co. contract

"In order clearly to outline the agreement as to the manner in which the contract of The Hoover Co. of North Canton, Ohio, is to be received, manufactured, shipped, billed and paid for, I am taking the liberty of reducing the understanding to writing.

"I have spent considerable time, effort and money in developing the contract and bringing it to the point of issuance of a purchase order by The Hoover Co.

"Your company has agreed to manufacture and ship the contract covered by the purchase order at a fixed price, in accordance with certain communications between yourselves and me, under dates of March 22nd and April 1st, 1951.

"The price to be paid by The Hoover Co. shall be that which is set out in the purchase order from The Hoover Co.

"Compensation to which I shall be entitled for my services, shall be the difference between the firm, fixed price contained in your communications to me under dates of March 22nd and April 1st, 1951; and the ultimate price to be paid by The

Hoover Co., upon the basis set out in the purchase order.

"The purchase order, when received, will run directly to G. F. Bush and Associates of Princeton, New Jersey, but will be forwarded to me and then remitted to your company.

"It is understood that I am to service the contract and follow through with certain duties which I have undertaken in connection therewith.

"Your company is to manufacture the order and ship the material directly to The Hoover Co. in accordance with the specifications which are part of the purchase order. Your company, however, is not to bill The Hoover Co. All shipping invoices, documents of transfer and title are to be forwarded to me, and I shall have the exclusive right to bill, upon G. F. Bush and Associates' billing forms and receive payment therefor in your behalf.

"In order to effect this arrangement, it will be necessary for you to forward G. F. Bush and Associates' invoices, shipment and billing forms, together with documents of shipment to me, with instructions to The Hoover Co. that all payments to your company are to be forwarded by The Hoover Co. directly to G. F. Bush and Associates, Box 3037, Euclid 17, Ohio.

"It is understood that I shall have the right to receive payment, cash checks made payable to your company under The Hoover Co. contract; and to remit to you the amounts payable to G. F. Bush and Associates under the agreement contained in the communications of March 22nd and April 1st. I shall be entitled to retain the balance as compensation due me.

"It will be necessary for me to open an agency account at Cleveland, Ohio to deposit payments made by The Hoover Co. and make payment therefrom of sums due you, and to withdraw therefrom the balance as compensation due me.

"I believe that the foregoing sets out the entire understanding between us with reference to The Hoover Co. order. Your acknowledgment of this communication will indicate your approval of the agreement as set out above.

"Sincerely yours,
/s/ Franklin G. Gepfert
Franklin Gepfert
FGG/mdl
"Approved and Agreed to by
G. F. Bush and Associates
/s/ George F. Bush April 19, 1951."
Owner

The defendant points out that the products to be purchased by The Hoover Company and by the Standby Products Company were to be used by those companies to fulfill government contracts in aid of the defense effort. He notes that on The Hoover Company contract, Black Industries for its relatively minor role, was to receive a profit of 84.09% on the anvils, 39.13% on the holder primers and 68.33% on the plunger supports. On the Standby Products Company contract, the plaintiff was to receive a profit of 84% on the anvils and 75.75% on the plunger supports. The defendant asserts that provisions in the contract as to the manner of ordering the goods, shipping them, billing and paying for them were designed to conceal these large profits from both The Hoover Company and the defendant.

In support of its contention that these alleged contracts are void as against public policy the defendant maintains that the profits accruing to Black Industries would have been passed on to the government and the public in the form of increased prices. As evidence of the policy of Congress to avoid excessive expenditures the defendant cites the Renegotiation Act, whose declared policy is as follows:

"It is recognized and declared that the Congress has made available for the execution of the national defense program extensive funds, by appropriation and otherwise, for the procurement of property, processes, and services, and the construction of facilities necessary for the national defense; that sound execution of the national defense program requires the elimination of excessive profits from

contracts made with the United States, and from related subcontracts, in the course of said program; and that the considered policy of the Congress, in the interests of the national defense and the general welfare of the Nation, requires that such excessive profits be eliminated as provided in this title." 50 U.S.C.A.Appendix, § 1211.

In addition the defendant cites statutory provisions prohibiting fees or kick-backs by subcontractors on cost-plus-a-fixed fee or cost reimbursable contracts, 41 U.S.C. A. § 51.

 In order to declare a contract, entered by the parties freely and without evidence of fraud, void as against public policy, the contract must be invalid on the basis of the recognized legal principles.

"* * * Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. Vidal v. Mayor [Aldermen and Citizens] of Philadelphia, 2 How. 127, 197, 198, 11 L.Ed. 205. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112; Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L. Ed. 500. It is a matter of public importance that good faith contracts of the United States should not be lightly invalidated. Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, this Court should not assume to declare contracts of the War Department contrary to public policy. The courts must be content to await legislative action." Muschany v. United States, 1945, 324 U.S. 49, 66–67, 65 S.Ct. 442, 451, 89 L.Ed. 744.

With a few exceptions, for example, a case involving attorney-client relations, Polkowitz v. Ewing, 115 N.J.L. 93, 178 A. 559 (Sup.Ct.1935), and a case involving employer-employee relations, Driver v. Smith, 89 N.J.Eq. 339, 104 A. 717 (Chancery 1918), the cases relied upon by the defendant to support his thesis that existing law requires me to declare this contract void as against public policy fall into three general categories.

The first category involves cases which hold that a contract promising compensation to a person for inducing a public official to exercise his discretion in a certain manner are void as tending to corrupt such officials, Tool Company v. Norris, 1864, 2 Wall. 45, 69 U.S. 45, 17 L.Ed. 868; Moffett v. Arabian American Oil Co., D. C.S.D.N.Y.1949, 85 F.Supp. 174, affirmed, 2 Cir., 1950, 184 F.2d 859, certiorari denied 1951, 340 U.S. 948, 71 S.Ct. 533, 95 L.Ed. 683; McCabe v. Kupper, 4 N.J.Super. 178, 66 A.2d 629 (App.Div.1949). Cf. Stone v. Wm. Steinen Mfg. Co., 133 N.J. L. 16, 42 A.2d 268 (Sup.Ct.1945), affirmed 133 N.J.L. 593, 45 A.2d 486 (E. & A.1946). Typical of this type of case is Tool Company v. Norris, supra. The plaintiff in that case sued on a contract whereby he would procure a government order and in which the defendant promised to pay him "for his services, in obtaining, or causing and procuring to be obtained, such order, all that the Government might, by the terms of their arrangement with the company, agree to above $17 for each musket." Holding such an agreement violated public policy, the Supreme Court stated:

"Other agreements of an analogous character might be mentioned, which the courts, for the same or similar reasons, refuse to uphold. It is unnecessary to state them particularly; it is sufficient to observe, generally, that all agreements for pecuniary considerations to control the business operations of the Government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question, whether im-

proper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country." 69 U.S. at pages 55, 56.

The second category of cases relied upon by the defendant concerns contracts the purpose of which was the performance of an illegal act or where the consideration in whole or in part was illegal, Auditorium Kennel Club v. Atlantic City, 199 A. 908, 16 N.J.Misc. 354 (Sup.Ct.1938) (a lease contemplating use of premises for dog racing, an illegal activity under New Jersey law).

The third category of cases advanced by the defendant involves agreements for collusive bidding on government contracts, Brooks v. Cooper, 50 N.J.Eq. 761, 26 A. 978, 21 L.R.A. 617 (N. & A. 1893); Gulick v. Ward, 10 N.J.L. 87 (Sup.Ct.1828). The latter case involved a contract which provided that the plaintiff would forbear from submitting an offer to the government to carry mail over a certain route provided that if the defendant received the government mail contract he would pay the plaintiff $1,000. The court held this contract to be void as against public policy as its arrangement reducing the number of competitors tendering bids for a government contract would defeat the clear purpose of the statute requiring that contracts be given to the lowest bidder.

■ The contract in the present case, however, does not fall in any of these categories. It is not a contract by the defendant to pay the plaintiff for inducing a public official to act in a certain manner; it is not a contract to do an illegal act; and it is not a contract which contemplates collusive bidding on a public contract. It should be noted that the first and third categories of cases, upon which the defendant relies most heavily, involve agreements which directly impinge upon government activities. In the case at hand, the contract's only effect on the government was that ultimately the government was to buy the product of which defendant's goods were to be a component. Neither the defendant nor the plaintiff had any dealings with the United States on account of this contract, and therefore the profit accruing to the plaintiff was not to have been earned as a result of either inducing government action or interfering with the system of competitive bidding. This contract cannot, therefore, be declared void as against public policy on the basis of the precedents cited by the defendant.

■ It is quite possible that the plaintiff was to have received a very high profit on the sale of the parts, either because The Hoover Company agreed to pay too high a price or because the defendant quoted too low a price. Further proof would be required to establish this as a fact. Even if it were proved that the plaintiff was to have received a far greater profit than the defendants for a much smaller contribution, the defendant would nevertheless be bound by his agreement by the familiar rule that relative values of the consideration in a contract between business men dealing at arm's length without fraud will not affect the validity of the contract, The Coast National Bank v. Bloom, 113 N.J.L. 597, 174 A. 576, 95 A.L.R. 528 (E. & A. 1934); Restatement of the Law of Contracts § 81 (1932).

The fact that the government is the ultimate purchaser of the product in which defendant's parts are used is cited by the defendant as a reason to hold that this contract is void as against public policy. To so hold would necessitate either ruling that all contracts are void if they provide for compensation for middlemen, such as Black Industries, between producer and purchaser of goods which ultimately are incorporated in products sold to the government, a result which is not supported by precedent and which would defy the realities of our economic life, or deciding in every case involving such a contract whether the compensation paid a middleman such as the plaintiff here who locates purchasers and assists the producer in other ways, is reasonable. This latter course would, in effect, impose price regulatory functions on the court. There are other and more effective methods of insuring that the government does not pay an unreasonable

price for its supplies. The manufacturer selling directly to the United States must conform to procedures such as bidding designed to protect the government, and which should, in conjunction with the ordinary considerations of profits and loss, insure that prime contractors do not pay outlandish prices for the products they buy in order to fulfill a government contract. The contract may be subject to renegotiation. 50 U.S.C.A.Appendix, § 1211 et seq. I do not believe that it is the function of the court to interfere by determining the validity of a contract between ordinary business men on the basis of its beliefs as to the adequacy of the consideration. Consequently, I hold that, assuming the facts to be as stated by the defendant, the contract sued on in this case is not void as against public policy and the defendant's motion for a summary judgment will, therefore, be denied.

Let an order be submitted in accordance with this opinion.