## A. C. FROST & CO. *v.* COEUR D'ALENE MINES CORP.

No. 78. Argued December 18, 1940.—Decided January 20, 1941.

*Messrs. Ernest L. Wilkinson* and *John W. Cragun,* with whom *Mr. Charles J. Kappler* was on the brief, for petitioner.

*Messrs. W. H. Langroise* and *James A. Wayne* for respondent.

*Solicitor General Biddle* and *Messrs. Edwin E. Huddleson, Jr., Chester T. Lane,* and *Christopher M. Jenks* filed a brief on behalf of the Securities & Exchange Commission, as *amicus curiae,* presenting the views of the Commission as to the interpretation of certain provisions of the Securities Act of 1933, as amended.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

September 10, 1934, respondent, by a written contract, gave to one Boland "the sole and exclusive right and option to purchase the whole or any part" of 1,300,000

shares of its treasury stock at 10 cents per share, payments to be made in installments. He immediately assigned the contract to petitioner, Frost & Company. April 26, 1935, this was modified as to time and amount of payments. May 15, 1935, another modification authorized respondent to sell optioned stock and credit petitioner with the proceeds above 10 cents per share.

Petitioner obtained 165,000 shares and paid therefor $16,500. Respondent sold many at prices above 10 cents and gave petitioner credits amounting to $16,306. None of the corporation's shares were registered under the Securities Act of 1933 as amended, c. 38, 48 Stat. 74; c. 404, 48 Stat. 881, 905. And upon that alleged ground, in June 1935, respondent refused delivery of the remaining optioned ones—855,150.

By complaint filed in an Idaho state court, March 26, 1937, petitioner charged that respondent had repudiated the option and asked judgment for $16,306, also damages consequent upon breach of the agreement.

The Answer denied liability upon the ground, among others, that the contract "was entered into in violation of law, and particularly in violation of . . . the Security Act of 1933, approved May 27, 1933, and Acts of Congress amendatory thereof and supplemental thereto, and particularly in this that the 1,300,000 shares of stock attempted to be sold by the defendant to the said W. J. Boland under said instrument was the treasury stock of the defendant corporation, and had never been registered for sale under said National Securities Act, or Acts amendatory thereof or supplemental thereto, with the Securities and Exchange Commission, and that the said W. J. Boland knew these facts and knew that the defendant could not legally sell to him the said stock or any part thereof; and defendant alleges that said contract was void ab initio."

The cause was tried without a jury. Some evidence tended to show that both parties purposed that petitioner

would sell acquired shares to sundry parties through use of the mails and instrumentalities of interstate commerce.

The trial court held the option unenforceable so far as not executed because contrary to law; that petitioner could recover the $16,306 credit; also that there could be no recovery for respondent's failure to deliver.

Upon appeal, the supreme court ruled that, as intended, petitioner sold acquired shares to sundry purchasers, directed deliveries to brokers for resale and "that all stock offered for sale amounted to public offerings and that interstate means of communication and transportation were used in connection therewith." Consequently it declared the agreement void ab initio. Further that the parties must be left in the situation where found. It ordered final judgment for respondent. 61 Idaho 21; 98 P. 2d 965, 967. This action was based wholly on interpretation and application of the Securities Act. Thus a federal question arose which demands determination. *Awotin* v. *Atlas Exchange Bank,* 295 U. S. 209, 213.

The essential purpose of the statute is to protect investors by requiring publication of certain information concerning securities before offered for sale.

Some of its relevant provisions are in the margin.[1]

Petitioner maintains that the record shows there was no public offering of optioned stock within the meaning of the statute and § 4 (1) is controlling. Considering the interpretation which we adopt it is unnecessary now

---

[1] Securities Act of 1933 as amended, 48 Stat. 74, 78, in 1934, 48 Stat. 881, 905–6.

"Sec. 2. [15 U. S. C. § 77b]. When used in this title, unless the context otherwise requires—

"(3) The term 'sale,' 'sell,' 'offer to sell,' or 'offer for sale' shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a

to pass upon the point. The Supreme Court of Idaho thought the evidence sufficient to show a public offering and, for present purposes only, we may accept that view.

No provision of the Act declares that in the absence of registration, contracts in contemplation of or having relation to a public offering shall be void. If there has

---

security, for value; except that such terms shall not include preliminary negotiations or agreements between an issuer and any underwriter. . . ."

"Sec. 4 [15 U. S. C., § 77d]. The provisions of section 5 shall not apply to any of the following transactions:

"(1) Transactions by any person other than an issuer, underwriter, or dealer; transactions by an issuer not involving any public offering; . . ."

"Sec. 5 [15 U. S. C., § 77e]. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

"(b) It shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security registered under this title, unless such prospectus meets the requirements of section 10; or

"(2) to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of section 10."

Section 11 [15 U. S. C., § 77k] permits security holders to sue specified persons who, in some way, make, permit or use an untrue statement in a registration statement, etc.

"Sec. 12. [15 U. S. C., § 77l]. Any person who—

"(1) sells a security in violation of section 5, or

"(2) sells a security (whether or not exempted by the provisions of section 3, other than paragraph (2) of subsection (a) thereof),

been no registration, it penalizes the doing of certain designated things—use of the mails, instrumentalities of interstate commerce, etc. It also declares that those who participate in proscribed action shall become liable to purchasers of the securities "who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." These are the sanctions which Congress has definitely provided in order to insure obedience to the statute. When invoked they must be given effect.

Although the challenged contract bears no evidence of criminality and is fair upon its face, we are asked to apply a sanction beyond that specified by declaring it

by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

"Sec. 24 [15 U. S. C., § 77x]. Any person who willfully violates any of the provisions of this title, or the rules and regulations promulgated by the Commission under authority thereof, or any person who willfully in a registration statement filed under this title, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both."

null and void because of relationship to a public offering. The basis for this demand is a supposed federal public policy which requires such annulment in order to secure observance, effectuate the legislative purpose and prevent noxious consequences.

Courts have often added a sanction to those prescribed for an offense created by statute where the circumstances fairly indicated this would further the essential purpose of the enactment; but we think where the contrary definitely appears—actual hindrance indeed of that purpose—no such addition is permissible. The latter situation is beyond the reason which supports the doctrine now relied upon.

Here the clear legislative purpose was protection of innocent purchasers of securities. They are given definite remedies inconsistent with the idea that every contract having relation to sales of unregistered shares is absolutely void; and to accept the conclusion reached by the supreme court below would probably seriously hinder rather than aid the real purpose of the statute.

The Securities & Exchange Commission, by permission, has filed a memorandum pointing out how this purpose may be thwarted and the investing public injured if the ruling below is approved. An excerpt from this is copied below.[2]

---

[2] EXCERPT FROM MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION: "The fundamental purpose of the Securities Act of 1933, as we stated under Point A, is to protect the investing public. The Act furnishes one form of protection by insisting that 'every issue of new securities to be sold in interstate commerce shall be accompanied by full publicity and information' to the end that 'no essentially important element attending the issue shall be concealed from the buying public.' Message of the President to the Congress, March 29, 1933. It is obvious that the purposes of the Act would be defeated by any judicial doctrine which prevented the issuing corporation from recovering from the underwriter, and putting to the intended use in its business, the

The rule that contracts in contravention of public policy are not enforceable came under discussion in *Steele* v. *Drummond*, 275 U. S. 199 and *Twin City Co.* v. *Harding Glass Co.*, 283 U. S. 353, 356, 357. In the latter the opinion declares, the principle "should be applied with caution and only in cases plainly within the reasons on which that doctrine rests. It is only because of the dominant public interest that one who, like respondent, has had the benefit of performance by the other party will be permitted to avoid his own promise."

The protean basis underlying this doctrine has often been stated thus—No one can lawfully do that which tends to injure the public or is detrimental to the public good. If it definitely appears that enforcement of a contract will not be followed by injurious results, generally, at least, what the parties have agreed to ought not to be struck down.

*Kimen* v. *Atlas Exchange Bank*, 295 U. S. 215 and *Dietrick* v. *Greaney*, 309 U. S. 190, pointed out that whether a contract shall be enforced required consideration of the broad purposes of relevant statutes and the

---

money invested by the public in the issuer. And it would be anomalous to rest such an injury to the investors upon the fact that the transaction in which the securities were distributed violated the Act, which was designed to protect those investors. Compare Sections 11 and 12 which, by implication, permit a purchaser to affirm a sale in violation of the Act. It can scarcely be assumed that any court would render such an unfortunate decision. Yet this would be the logical consequence of applying literally the broad language used by the Supreme Court of Idaho in stating the proposition that the courts will not lend their aid to the parties to a contract that is prohibited by law or is against public policy.

"It appears to us to be entirely immaterial whether in such a case, the agreement is labelled 'void' or the parties are held to be 'in pari delicto.' There, labels, as often is the case, merely state the conclusion reached, but do not aid in solution of the problem. The ultimate issue is whether the result in the particular case would effectuate or frustrate the purposes of the Act."

probable effect upon this. In both causes the end which Congress intended to accomplish was treated as the controlling factor.

The Supreme Court of Idaho, we think, misinterpreted and improperly applied the Securities Act. Its judgment must be

*Reversed.*

MR. JUSTICE STONE concurs in the result.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this cause.