Stephen D. FULLER, Paul A. Fuller, Volney Righter, as Executor of the Last Will and Testament of Brewster Righter, deceased, and Martin Davis, Plaintiffs,

v.

Arthur DILBERT, Samuel Dilbert and Abraham Dilbert, Defendants.

United States District Court
S. D. New York.
Dec. 19, 1962.

---

1. Mass.Ann.Laws, Ch. 229 § 2 (1958), Damages for Death by *Negligence,* etc. (Emphasis supplied).

Breed, Abbott & Morgan, New York City, for plaintiffs; Thomas A. Shaw, Jr., New York City, of counsel.

Schwartz, Nathanson & Frank, New York City, for defendants Arthur Dilbert and Samuel Dilbert; George H. Schwartz, New York City, of counsel.

John R. Peddy, New York City, for defendant Abraham Dilbert.

Peter A. Dammann, Gen. Counsel, David Ferber, Associate Gen. Counsel, Allan R. Roth, Atty. for Securities and Exchange Commission, Washington, D. C., amicus curiae.

DAWSON, District Judge.

This is a motion made by defendants Arthur Dilbert and Samuel Dilbert, pursuant to Rule 56 of the Rules of Civil Procedure, for summary judgment in favor of said defendants (a) dismissing the complaint, (b) declaring that neither the validity nor the enforceability of the stock purchase agreement of March 10, 1961, annexed to the amended complaint, and the plaintiffs' guaranty of defendant Abraham Dilbert's performance thereof, is in any way impaired by any provision of the Securities Act of 1933 or the Securities Exchange Act of 1934, and (c) directing the plaintiffs to arbitrate any and all issues that they may seek to raise under such stock purchase agreement.

The action appears to be one by certain guarantors of the purchaser's obligations under a contract for the sale of certain unregistered securities by two corporate insiders in which plaintiffs seek to have such contract and their guaranty thereunder declared void and unenforceable as in violation of Section 5 of the Securities Act of 1933 and Section 16(c) of the Securities Exchange Act of 1934. It is a rather unusual situation in that the plaintiffs are themselves seeking to set aside the obligation as guarantors, rather than defending a suit brought upon the guaranty.

Since several important issues relating to the meaning and effect of the provisions of the Securities Acts were recited on the motion, the Securities and Exchange Commission was requested to submit its views on these issues as amicus curiae. An excellent memorandum of the Securities and Exchange Commission, as amicus curiae, has been filed which helps both to define the issues and to point up the principles of law applicable thereto.

The factual situation underlying this litigation seems to be substantially as follows:

On March 10, 1961, a written agreement was executed between Arthur and Samuel Dilbert, as sellers, and Abraham Dilbert, as purchaser, providing for the sale of 164,540 shares of the common stock of Dilbert's Quality Supermarkets, Inc. A copy of this agreement is annexed to the amended complaint. There does not seem to be any issue as to the fact of the agreement. It also seems from the papers to appear without substantial controversy that the sellers were officers and directors of Dilbert's Quality Supermarkets, Inc., and that they agreed to sell to the purchaser, another officer and director of the corporation, all of their stock in the corporation which had been acquired from Louis Dilbert, the father of the sellers, who, prior to his death, was the chief executive officer of the corporation. The sellers represented in the agreement that they were the record and beneficial owners, between them,

of 48,846 shares of common stock of the corporation and that each of them was entitled to receive 48,827 shares of the common stock under the will of Louis Dilbert, deceased. The sellers also represented in the agreement that between them they were the owners of 902 shares of convertible preferred stock of the corporation which, under the agreement, would be convertible into twenty shares of common stock for each share of preferred stock.

The agreement provided for the sale to take place in installments. It recited that the sellers would undertake to convert the preferred stock into common stock and deliver such common stock to the purchaser. It also recited that in the event the sellers were unable to deliver such stock to the purchaser they would furnish the purchaser with any instruments necessary to evidence transfer of title.

It appears without dispute from the papers that although the purchaser was obligated for the entire price he contemplated designating certain other investors to take and hold certain other portions of the block being sold. The agreement provided in Paragraph 8 as follows:

"8. Abraham Dilbert and his designees agree that the shares purchased hereunder are being acquired for investment and that appropriate letters of investment, as required by the attorneys for the sellers, will be given by Abraham Dilbert and/or his designees, so that the sale herein made shall be deemed to be exempt from the Securities Act of 1933, as amended, in accordance with the provisions of Section 4(1)."

At the end of the agreement is the guaranty by Stephen D. Fuller, Paul A. Fuller, Brewster Righter and Martin Davis, which simply reads:

"Performance of the foregoing agreement by Abraham Dilbert is hereby guaranteed."

It appears without dispute that Abraham Dilbert, who was the purchaser under the agreement, defaulted in the performance of his obligations under the agreement. Before an action could be brought against Abraham Dilbert or the guarantors, the guarantors brought this suit to declare the agreement void, including the guaranty agreement.

The agreement has in it the provision that "any controversy or claim arising under, out of or in connection with this agreement or any breach thereof, shall be settled by arbitration in the City of New York, State of New York, in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof."

The basis upon which the plaintiffs, as guarantors, seek to declare the stock purchase agreement and the guaranty thereof void is set forth in Paragraph SIXTH of the amended complaint as follows:

"* * * [T]hat, unknown to the plaintiffs, the defendant Abraham Dilbert did not at the time of the making of said agreement intend to purchase said shares for investment, but on the contrary without plaintiffs' knowledge, intended to make and thereafter made a public distribution thereof in violation of said section [Section 5 of the Securities Act of 1933], and on the ground that said agreement and guaranty are void and unenforceable because at the time of the making of said stock purchase agreement of March 10, 1961, the defendants Arthur Dilbert and Samuel Dilbert were not the owners of 113,696 shares of the common stock contracted to be sold under said agreement and said agreement did not provide for delivery of the shares within twenty (20) days within the meaning of Subsection (c) of Section 16 of the Securities

Exchange Act of 1934, Title 15, U.S.C., § 78(p) (c)."

This motion raises the question as to whether the attack upon the purchase agreement and the guaranty thereof, on the basis hereinabove set forth, is good, or whether the complaint seeking to attack it on this basis should be dismissed.

■ We must start out with the fundamental proposition that violations of the Securities Acts do not necessarily render a contract void for all purposes. Frost & Company v. Coeur D'Alene Mines Corporation, 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1941); Wood v. Reznik, 248 F.2d 549 (7th Cir. 1957); Judson v. Buckley, 130 F.2d 174 (2d Cir. 1942), cert. denied, 317 U.S. 679, 63 S.Ct. 161, 87 L.Ed. 545 (1942); Bankers Life and Casualty Company v. Bellanca Corporation, 288 F.2d 784 (7th Cir. 1961), cert. denied, 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 31 (1961).

■ Even more important is the fact that the contract on its face does not conflict with the Securities Acts, nor does the amended complaint so allege. The complaint alleges that the contract was void because Abraham Dilbert, at the time of the making of the agreement, did not intend to purchase the shares for investment but intended to make a public distribution thereof in violation of Section 5 of the Securities Act of 1933.[1] There is no dispute that there was no registration statement in effect for the proposed transaction. If one of the parties was an underwriter a registration statement would have been necessary. Section 2(11) of the Securities Act of 1933 defines underwriter to mean "any person who has purchased from an issuer with a view to, or offers to or sells for an issuer in connection with, the distribution of any security." Abraham Dilbert could designate others to take some of the stock contracted to be sold to him but he could comply with the contract and with the Securities Acts only if he did so in a manner which would not result in a "distribution." Accordingly he could offer for designation only such persons who would not have need of the protection afforded by the Securities Act of 1933 because they have intimate knowledge of the issuer and so would be in a position to hold the stock for investment. See Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1954).

■ In the contract (Paragraph 8) Abraham Dilbert, the purchaser, agreed that the shares purchased were being acquired for investment "so that the sale herein made shall be deemed to be exempt from the Securities Act of 1933." This was part of the agreement which was guaranteed by the plaintiffs in this action. Plaintiffs now allege in the complaint that Abraham Dilbert did not intend to purchase such shares for investment but intended to make a public distribution thereof. If so he was, of course, violating the agreement to which he was a party and the undertaking in the contract which was guaranteed by the very plaintiffs herein who now make this assertion. There is no argument advanced that the agreement would be void under Section 5 of the Securities Act of 1933 except this alleged intention on the part of Abraham Dilbert to violate his contract. Whether he did have such intention and whether he did make a public distribution in violation of his contract is a question of fact which cannot be decided upon affidavits and the moving papers but must await trial.

It may be pointed out that if Abraham Dilbert disposed of the securities in a manner to effect a "distribution" the very fact that he did so was a violation of his contract and it may well be that the guarantors would be liable for this breach of the contract.

---

1. Sec. 4(1) of the Securities Act of 1933 exempts from the registration requirement of Section 5 "transactions by an issuer not involving any public offering."

The complaint also suggests that the agreement was void because at the time of the making of the agreement Arthur Dilbert and Samuel Dilbert were not the owners of 113,696 shares of common stock contracted to be sold.[2] It is urged that under this state of facts the contract would be void because Section 16(c) of the Securities Exchange Act of 1934 provides that it shall be unlawful for an insider to sell equity securities of his corporation if he "(1) does not own the security sold, or (2) if owning the security, does not deliver it against such sale" within a prescribed time. This section is part of the statutory plan for preventing the unfair use of any inside information by corporate insiders. One device employed for this purpose was the "short sale" and to prevent such possibility Section 16(c) requires that the insider own the shares that he is selling.

There is no doubt that both under the terms of the agreement and the requirements of the statute the sellers are obligated to deliver the stock that they own. That is what they agreed to do in the agreement; that is what the statute requires them to do.

■ Plaintiffs contend that legal title to 97,654 shares of the common stock owned by Louis Dilbert at his death was never transferred to the sellers and that therefore they never owned the securities contracted to be sold in the agreement. Sellers contend that under New York law they had equitable title to such stock. It is not necessary that the sellers have legal title to the stock. There is no particular form of legal or equitable title required to satisfy the requirements of ownership within the meaning of Section 16(c) (1). The real question is whether this was a "short sale," i. e., whether the sellers had sufficient property interest in the stock to be sold to justify them in making the sale. This again raises questions of fact re-

lating to the status of the administration of the estate of Louis Dilbert, etc. These issues cannot be decided upon affidavits or motion papers but must await a trial.

■■ It is also urged in the complaint that the contract does not require delivery against the sale to be made "within twenty days thereafter" as required by Section 16(c) (2) of the Securities Exchange Act of 1934. The time for delivery prescribed in this section must be deemed to run from the time when the obligation to deliver first arises. Under the terms of the present contract the sellers cannot require the purchaser to take the securities except in accordance with the installment provisions and the 20-day period would run from the day that the obligation to deliver arises and not from the date of the agreement. Furthermore, Section 16(c) (2) provides that "no person shall be deemed to have violated this subsection if he proves that notwithstanding the exercise of good faith he was unable to make such delivery or deposit within such time, or that to do so would cause undue inconvenience or expense." This again would raise questions of fact which cannot be decided upon affidavits or motion papers.

To recapitulate:

The purchase agreement does not on its face appear to violate the Securities Act of 1933 or the Securities Exchange Act of 1934. It appears without dispute that the purchaser failed to observe the obligations of the agreement, which obligations were guaranteed by the plaintiffs. A hearing may be necessary to determine whether the purchaser violated his agreement by making a "distribution" of the securities; but if he did it seems difficult to see how this would excuse the guarantors who had guaranteed that he would not do exactly that thing. However, there may be issues of fact as to

2. These apparently were the shares the sellers would receive from the estate of Louis Dilbert and would receive on the conversion of the preferred stock.

whether he did make such distribution, as well as issues of fact as to whether the sellers owned, at least equitably, the securities which they were selling. Those are issues of fact which might well be decided by arbitration, under the terms of the agreement, except that Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), would seem to limit the availability of arbitration in a dispute such as exists in the present case.

There is no reason why this case should not proceed very promptly to trial. The issues of fact hereinabove referred to can be determined very easily at that time. So much of the motion as seeks summary judgment is denied. So much of the motion as seeks to refer the issue to arbitration is denied. So ordered.