M. L. LEE & CO., Inc.

v.

AMERICAN CARDBOARD & PACKAG-
ING CORPORATION, Murray Toll
and Jacquelyn Toll.

MILTON D. BLAUNER & CO.

v.

AMERICAN CARDBOARD & PACKAG-
ING CORPORATION, Murray Toll
and Jacquelyn Toll.

Civ. A. Nos. 34048, 34049.

United States District Court
E. D. Pennsylvania.

June 30, 1964.

Frederick H. Knight, 3rd, John R. McConnell, of Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Arnold R. Ginsburg, Philadelphia, Pa., for defendants.

DAVIS, District Judge.

These actions are before the Court on the Plaintiffs' motions for Judgment on the Pleadings and to dismiss the Defendants' Counterclaims in each action. Since the circumstances giving rise to these suits are identical in all respects, they will be considered as one action for purposes of this Opinion.

A summary of the events leading up to the institution of the present action is necessary for a clear understanding of the applicable principles involved.[1] The defendants are a closely held corporation and the principal stockholders in the corporation. The plaintiffs are corporations engaged in the securities and underwriting business. Early in 1961, negotiations were commenced between the defendant corporation ("Corporation") and Milton D. Blauner & Co., Inc. ("Blauner & Co.") for the purpose of the "Corporation" going public. Thereafter, M. L. Lee & Co., Inc. ("Lee & Co.") and others joined with "Blauner & Co." as part of the underwriting group and the negotiations culminated in the execution of a letter agreement of September 21, 1961 between "Blauner & Co.", as managing member of the underwriting group, and the "Corporation". Subsequently, "Corporation" proceeded with the necessary preparations for the public offering of its shares, which never reached fruition. Assuming that the public offering was initially stalled through the plaintiffs own conduct, the underwriting plan was completely abandoned in the face of the stock market collapse of May 28, 1962. Faced with such an atmosphere, the underwriters informed the "Corporation" that they would not proceed further with the public offering. A meeting was held on June 6, 1962 in which the "Corporation" received a total of $37,500.00 from the plaintiffs and the "Corporation" issued promissory notes for that amount payable August 15, 1963. At the meeting, an agreement was executed concerning the collateral put up by the individual defendants to secure the payment of

1. Since the motion for judgment on the pleadings will be granted only where the moving party is clearly entitled to judgment on the basis of undisputed facts, the statement of facts will be given in a light most favorable to the defendant. Smith-Corona Marchant, Inc. v. American Photocopy Equipment Co., 214 F. Supp. 348 (S.D.N.Y.1962).

the notes. The most disputed facts concerning this agreement are: 1) whether or not the monies received by the "Corporation" was a loan or liquidated damages for the failure of the underwriters to make the public offering; 2) whether or not repayment of the "loan" was to be unconditional or only to be repaid out of the proceeds of a public offering of "Corporation's" stock, should one eventuate. The notes were not paid by the "Corporation" on August 15, 1963 and notice of dishonor was given to the individual defendants. This action was then commenced for the full amount of the notes.

The plaintiffs move first for judgment on the pleadings under F.R. Civ.P. 12(c), or in the alternative, to strike defendants four enumerated defenses under F.R.Civ.P. 12(f). It is settled law that a party will be granted judgment upon a motion for judgment on the pleadings only if there are no disputed facts, which, if proven adversely to the moving party, would defeat recovery. For purposes of this rule, all the allegations of the defendants' answer which are well pleaded are taken as true and all averments by the plaintiff which are denied by the defendant are taken as false. 2 Moore's Federal Practice, (2nd ed. 1960) ¶ 12.15. Since the state of the record clearly shows that there are material facts in dispute, the motion for the judgment on the pleadings will be denied. It is no answer that the defendant, at the trial of the cause, might be unable to prove the facts alleged in an effort to defeat recovery. Weinrich v. Retail Credit Co., 186 F.Supp. 392 (W.D.Pa. 1960). In deciding the motion for judgment on the pleadings, the court will not look beyond the pleadings themselves to decide whether certain facts exist on which a substantive rule of law will operate to exclude proof of other facts.

The motion to strike will also be denied. A defense will be stricken only when it is legally insufficient to prevent recovery under any state of facts reasonably able to be inferred from the well pleaded allegations of the answer. Lehmann Trading Corp. v. J & H Stolow, Inc., 184 F.Supp. 21 (S.D.N.Y.1960). Also, such a motion should be denied where there are questions of fact for determination. Moriarty v. Curran, 18 F.R.D. 461 (S.D.N.Y.1956); Reid v. Doubleday & Co., Inc., 109 F.Supp. 354 (N.D.Ohio 1952).

Turning to plaintiffs' motion to dismiss defendants' counterclaim I under F.R. Civ.P. 12(b), we are confronted with a claim based on an alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b).

Section 10(b) of the Act provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—* * * (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 adopted by the Commission provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, (1) to employ any device, scheme; or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made,

not misleading, or (3) to engage in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Counterclaim I contains thirty (30) numbered paragraphs, with numerous subparagraphs, which, in essence, state as facts the events occurring between the defendants and the underwriters during their negotiations and preparations for the "Corporation" going public. These allegations may be fairly summarized as follows:

1) The agreement of September 21, 1961 was a binding contract for the purchase by the underwriters of the shares of the "Corporation" for resale to the public;

2) The "Corporation", relying on this contract and the promises and assurances of the underwriters, made the necessary preparations for going public to comply with the registration requirements of the Securities and Exchange Commission;

3) The preparations included various undertakings of some financial magnitude which would not have been attempted without the assurance of financial assistance from the proceeds of a public offering of the "Corporation's" stock;

4) The failure of the public offering to materialize prior to the market slump of May 28, 1962, was due solely to the unexplained lack of diligence on the part of the underwriters;

5) The promises, assurances and overall conduct of the underwriters constituted, at least, a course of business which operated as a fraud upon the "Corporation";

6) The practices of the underwriters in this entire transaction, denominated as a fraud, was a violation of the anti-fraud provision of the Securities Exchange Act of 1934 and, in particular, a violation of Rule 10b–5.

Assuming as we must, that the allegations of fact are true for purposes of our present ruling, we are faced with a preliminary question of law. Does Rule 10b–5 require a consummated purchase or sale for a claim to be asserted on the basis of fraud? The plaintiffs assert that "the statute itself is designed to cover only those fraudulent acts which are connected with an actual purchase or sale of a security" relying on Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1952). In Birnbaum, the court held that Rule 10b–5 was applicable only to fraud perpetrated upon a buyer or seller and was not meant to give a cause of action for breach of fiduciary duty by corporate insiders resulting in fraud upon one not classified as a buyer or seller. Clearly, in the instant case, the "Corporation" was to be the seller and the plaintiff-underwriters were to be the buyers when the public offering materialized, and therefore Birnbaum is inapplicable to the present transaction.

Plaintiffs further assert that "in no case has a court granted relief under Rule 10b–5 where there was not an actual purchase or sale of securities." Defendants, in urging that the allegations of Counterclaim I do state a good cause of action, fail to cite any case which contradicts plaintiffs' statement. The court's own research has also failed to uncover a contrary holding.

We are therefore to decide the question from a construction of the statute itself. However, this task is quickly seen not to be onerous for we believe the statutory language is clear. Rule 10b–5 condemns as unlawful " * * * for any person, directly or indirectly, * * * (3) to engage in any * * * course of business which operates or would operate as a fraud * * * upon any person, in connection with the purchase or sale of any security." The Act defines purchase to include any contract to purchase [Securities Exchange Act of 1934, 15 U.S.C.A. 78c(a) (13)] and defines sale to in-

clude any contract to sell [Securities Exchange Act of 1934, 15 U.S.C.A. 78c(a)(14)]. The legislation is remedial in nature and should be liberally construed. See, Slavin v. Germantown Fire Insurance Company, 174 F.2d 799 (3rd Cir. 1949). Therefore the conclusion is inescapable that a defrauded person has a valid claim under Section 10(b) and Rule 10b–5 where the fraud was in connection with a contract to purchase or sell securities.

We do not decide whether a binding contract did exist; that the plaintiffs conduct did operate as a fraud on the defendants; nor whether or to what extent the damages alleged are recoverable upon proof of the allegations of the counterclaim. If, after the pleadings are closed and discovery utilized, there then remains no disputed fact necessary to a determination of the relevant question of law, these legal issues can be decided on a motion for summary judgment under F.R.Civ.P. 56.[2]

Finally, plaintiffs have also moved for dismissal as to Counterclaim II. We are again confronted with a claim, founded essentially on common law fraud, in which the factual situation is in dispute. The allegations which defendants claim give rise to a violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 are reiterated in this counterclaim making them the basis of common law actions. Since the motion to dismiss Counterclaim I will be denied, the dismissal of the coupled common law action will also be denied and remain here under the doctrine of pendant jurisdiction. Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3rd Cir. 1963). This claim, however, may again be attacked when the factual basis is clear and readily susceptible to an application of the legal principles involved, which would render a final adjudication feasible.

---

2. The requirement that the unlawful conduct be "in connection with" the purchase or sale is likewise to be decided only after the facts have been determined or remain undisputed. But Cf. Cooper v. North Jersey Trust Co. et al., 226 F.Supp. 972 (S.D.N.Y.1964).