John Franklin **FOSTER** and Gary Kemp, **Plaintiffs-Appellants,**

v.

**FINANCIAL TECHNOLOGY INC.** et al., **Defendants-Appellees.**

No. 73-3202.

United States Court of Appeals, Ninth Circuit.

April 30, 1975.

Paul S. Nesse, San Jose, Cal., for plaintiffs-appellants.

Royal M. Galvin, Beverly Hills, Cal., for defendants-appellee.

## OPINION

Before CHAMBERS and WRIGHT, Circuit Judges, and THOMPSON,* District Judge.

CHAMBERS, Circuit Judge:

In this action to recover damages for violations of section 5 of the Securities Act of 1933 and section 10(b) and rule 10b–5 of the Securities Exchange Act of 1934, plaintiffs Foster and Kemp appeal from a summary judgment for defendants. The only issue before us is whether, taking plaintiffs' allegations as true, defendants' violations of the securities laws entitle plaintiffs to any monetary relief.

In 1970, plaintiffs each paid $10,000 to American Information Exchange, Inc. (AIE), a wholly owned subsidiary of defendant Financial Technology, Inc. (FTI), for the privilege of becoming AIE franchisees. AIE, it is alleged, failed to perform its obligations under the franchise agreement, and plaintiffs sought return of the $10,000. In settlement of these claims FTI agreed to sell to each plaintiff 6,667 shares of common stock of Basic Resources, Inc. (BRI), another defendant, which was to be issued to FTI in exchange for some oil properties. The agreement provided that the shares be delivered to plaintiffs on or before April 30, 1971, and that upon acceptance of the shares plaintiffs were to execute releases of any claims they possessed against FTI, AIE, and their officers and directors, arising out of the franchise agreement. Also, plaintiffs agreed to

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

forbear taking any action on the claims prior to April 30, 1971. The BRI shares were never delivered, and no releases were executed.

In January 1972, plaintiffs commenced this action against FTI, BRI, and Clifford A. McLin and John Dillard, officers of FTI and BRI. Liability was predicated on the failure to register the sale of the BRI shares and certain statements made in connection with the sale by McLin and Dillard, which misrepresented their position within FTI, the probability that the deal between FTI and BRI would ever be consummated, and BRI's financial position. They seek damages in the amount of the claims they were to release—$10,000. Because of FTI's present financial condition it appears that plaintiffs look principally to the assets of the individual defendants for recovery.

While this action was pending, FTI entered proceedings under Chapter XI of the Bankruptcy Act. In these proceedings plaintiffs each submitted verified claims for $10,000. A plan of arrangement was confirmed in which plaintiffs were each to receive 20,000 shares of FTI common stock in settlement of their claims. From the stock quotations contained in the record, it appears that after the settlement the 20,000 shares could have been sold for $1,000.

In the present action, summary judgment was granted for defendants on the ground that, regardless of whether there were violations of the securities laws in connection with the sale of the BRI shares to plaintiffs, plaintiffs are entitled to no damages.

■ In their pretrial statement the parties stipulated that the sale of the BRI shares to plaintiffs was subject to the registration requirements of section 5 of the Securities Act. Plaintiffs' only remedy for a violation of these requirements is spelled out by section 12(1) of the Act: recovery of any consideration paid. Defendants' argument, accepted by the district court, is that because plaintiffs failed to execute the releases, there is no consideration for them to re-

cover. We disagree. The settlement agreement, as we construe it, was a bilateral contract; FTI's promise to deliver the shares was given in exchange for two distinct promises by plaintiffs: (1) an unconditional promise to forbear bringing any action on the franchise agreement between the date of the contract, February 15, 1971, and April 30, 1971; and (2) a promise, performance of which was conditioned upon acceptance of the shares, to execute formal releases. Plaintiffs' performance of the first promise gave FTI one of the benefits it had bargained for—a 75-day period during which its officers could attempt to close the deal with BRI and resolve FTI's financial difficulties, without threat of suit. We view this 75-day forbearance as consideration rendered, the reasonable value of which is recoverable under section 12(1).

■ If plaintiffs can prevail on their 10b–5 claims, they may be able to obtain further relief. In general, rule 10b–5 permits defrauded buyers to recover the difference between the value of the consideration they gave and the value of the security they received. *See* Levine v. Seilon, Inc., 439 F.2d 328, 334 (2d Cir. 1971). For plaintiffs, damages measured under this formula will be equal to their recovery under section 12(1). But in addition to these out-of-pocket damages, federal courts have increasingly recognized the buyer's right to consequential damages where it can be proven with reasonable certainty that such damages were caused by the defendants' 10b–5 violation. Zeller v. Bogue Elec. Mfg. Co., 476 F.2d 795, 802–03 (2d Cir.), cert. denied, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973); Madigan, Inc. v. Goodman, 498 F.2d 233, 238–40 (7th Cir. 1974); *accord*, Restatement (*Second*) of Torts § 549(1)(b) (Tent. Draft No. 11, 1965).

■ Reviewing the allegations in plaintiffs' complaint, it is possible they might be able to prove that theirs is an appropriate case for consequential damages. At the time plaintiffs entered into the settlement agreement they each pos-

sessed a claim against AIE for $10,000. Assuming that they could have realized more than they ultimately did on these claims had they sued upon them at that time, when FTI was apparently in sounder financial health, defendants' conduct in inducing them to forego this opportunity, if proven, caused them to suffer a real loss, which should be compensable under rule 10b–5. These opportunity-lost damages are the same in kind as those incurred in *Zeller*, where because of the 10b–5 violation, a corporation lost the extra profits it would have earned had it reinvested its excess funds in its own operation instead of using them to purchase securities from the defendant. 476 F.2d at 803.

■ We hasten to add that in proving these consequential damages, plaintiffs' burden on the issue of causation is not a light one. They must prove first, that defendants' misrepresentations violated rule 10b–5; second, that but for these misrepresentations plaintiffs would have brought suit on their claim against AIE at the earlier date; and third, that any losses plaintiffs incurred were a reasonably foreseeable consequence of these misrepresentations.

■■ Further, plaintiffs' damages do not necessarily include the full difference between what they could have realized on their claim had they asserted it instead of entering into the settlement and what they ultimately realized in the Chapter XI proceeding. As in all 10b–5 cases, their damages are limited by what they would have realized if they had acted upon their claim when they first learned of the fraud or had reason to know of it. *Esplin v. Hirschi*, 402 F.2d 94, 104–05 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). Moreover, in this case there may be an additional limitation as a result of the apparent breach of FTI's promise to deliver the shares on or before April 30, 1971. Under the familiar mitigation of damages principle, a party cannot recover that part of his loss caused by his own failure, once he has reason to know of the breach, to take

reasonable steps to avoid further harm. Although plaintiffs are not here asserting a breach of contract claim, the notion of what constitutes reasonable conduct by the nonbreaching party carries over to the determination of the amount of plaintiffs' loss for which defendants should be held responsible. Consequently, at the point where a reasonable man—either because of the breach or discovery of the fraud—would have taken action to protect himself from further depreciation in the value of the claim, the chain of causation is cut and plaintiffs cannot recover damages for subsequent losses.

■ There should also be subtracted from plaintiffs' damages any portion of the amount they may recover under section 12(1) for their 75-day forbearance that represents compensation for their assumption of the risk that the amount they could realize on their claims would diminish over that period. Otherwise, plaintiffs would be receiving a double recovery.

■ One additional point requires comment. Defendants argue that because plaintiffs failed to execute the releases and subsequently submitted their claims in the Chapter XI proceedings, they are precluded from recovering damages, presumably under some notion of election of remedies. This mistakenly assumes that the remedies of rescission and consequential damages for losses suffered prior to that rescission are inconsistent. *See* Restatement (*Second*) of Torts § 549(1)(b), Comment *e* (Tent. Draft No. 11, 1965). As the above analysis indicates, we believe that plaintiffs' prosecution of their claims against FTI, rather than operating as an election against seeking damages, was the reasonable conduct required of them to protect themselves from further loss. Under the rule advanced by defendants, plaintiffs, upon learning of the fraud, would face the dilemma of seeking rescission and thereby waiving their right to recover consequential damages, or not seeking rescission, which might subject them to further losses for which they could receive no compensation.

Because we conclude that plaintiffs' allegations may entitle them to some monetary relief, the summary judgment is reversed and the case is remanded to the district court for consideration of all issues presented by plaintiffs' claims. As pointed out in Judge Thompson's concurring opinion, some of the arguments considered in this opinion were not fully developed in the district court. The case here is different from that where a party seeks to assert for the first time on appeal a claim, defense, or objection. Plaintiffs' point from the outset has been that they were wrongfully induced to release or promise to release their claims against AIE. The only question we consider here is the proper measure of their relief. In these circumstances the guidelines for appellate review should not be so rigidly construed. Further, this court has held that where justice so requires, a case may be remanded to the district court to decide issues not argued before it originally. *E. g.*, Nuelsen v. Sorensen, 293 F.2d 454, 462 (9th Cir. 1961). The facts of this case are unique and the issues complicated. Plaintiffs' allegations indicate they are out $10,000 and have little to show for it. Since a remand is required in any event, we believe it proper for the district court to consider whether plaintiffs are entitled to the relief discussed herein.

Reversed.

BRUCE R. THOMPSON, District Judge (concurring).

I concur, albeit reluctantly, in the opinion of Chief Judge Chambers. My reluctance stems from a belief that the District Judge was "sandbagged" by the presentation made by counsel on the motions for summary judgment.

Plaintiffs' amended complaint presented two basic claims for relief, a claim under Section 5 of the Securities Act of 1933 alleging a sale by defendants of unregistered securities (15 U.S.C. §§ 77e and 77*l*) and a claim under Section 10b and Rule 10b–5 of the Securities Exchange Act of 1934 alleging fraud and misrepresentation in the sale of the securities (15 U.S.C. § 78(j)). Initially, a motion by defendants to dismiss the complaint was denied.

On November 27, 1972, the parties filed a joint pretrial statement. Pertinent admissions and claims are as follows:

"3. Undisputed facts: On February 15, 1971, when defendants made their offer to plaintiffs, defendants were 'insiders' as defined by the Securities Act of 1934. Defendants were directors and officers of FTI and BASIC RESOURCES CORPORATION. They did make the offer to compromise plaintiffs' claims and the offer was accepted. No certificates were in fact delivered. It is admitted the securities offered to plaintiffs were not registered with the Security & Exchange Commission though they were within the registration requirements of the 1933 Act. Plaintiffs stand ready, willing and able to execute formal releases as plaintiffs have promised, though they have not as yet executed such a formal release.

"4. Disputed factual issues: Plaintiffs contend defendants failed to disclose the weak financial position of BASIC RESOURCES CORPORATION at the time the offer to sell the securities was made. Had the disclosure been made, plaintiffs would not have accepted the offer.

"5. Relief prayed: Plaintiffs' promise to release their claims was worth $10,000, and each plaintiff seeks that sum from defendants. Under the failure to register theory, plaintiffs are entitled to the agreed value of their released claim, to wit: $10,000.

6. Points of law: Liability under the failure to register theory is absolute. The defendants made an offer to sell securities subject to registration, though they were not; *the value paid was a release of the claim of $10,000*, and plaintiffs' remedy for failure to register has not been barred by the Statute of Limitations.

"Loss, Security Regulations, Volume 3, Chapter 11c, p. 1693.

"The crucial point of law is whether plaintiffs have been damaged at all. *Plaintiffs contend their promise to release their claim constitutes consideration and therefore entitles plaintiffs to a recovery of $10,000 from defendants.*" (Emphasis added.)

On May 4, 1973, plaintiffs filed a motion for summary judgment directed solely to the Section 5 claim, the sale of unregistered securities. By affidavit in support of the motion, plaintiffs reaffirmed their position: "In the present case, the Plaintiffs released claims in the aggregate amount of $20,000, in consideration for the securities, said release not being in controversy."

On May 18, 1973, the district court entered an order denying the summary judgment and said:

"Pursuant to 15 U.S.C. § 77*l* any person who uses the mails to offer or sell a security subject to the Act, without a registration statement being in effect as to the security is liable to

" '* * * the person purchasing such security from him * * * to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.'

"The purpose of this section is clear. It was Congress's intention that a party who purchased stock which was not registered and should have been registered under the Act is entitled to undo the transaction. The purchaser may sue in equity for recision and return of his consideration, or if he no longer owns the security he may sue for damages. Johns Hopkins University v. Hutton, 297 F.Supp. 1165 (D.Md.1968), rev'd on other grounds 422 F.2d 1126 [1124] (4th Cir. 1970).

"The plaintiffs have moved for summary judgment. According to the joint pre-trial statement the defendants admit that the offer to sell was in violation of 15 U.S.C. § 77e but they deny liability, presumably on the ground that the agreement which was entered into is wholly executory.

"* * *

"There is apparently a serious question as to whether there has been any transaction in the instant case for the court to undo. Since at the present time there is a genuine issue of fact as to whether there has ever been a release of the claims in question, plaintiffs' motion for summary judgment must be denied. The court, however, invites the defendants to move for summary judgment, prior to trial. If defendants can show by affidavit that the release has never been executed and that plaintiffs are pursuing the claims that they allegedly released, and that showing is not contradicted by opposing affidavit, summary judgment for defendant will be appropriate. If additional time is necessary to perfect the summary judgment motion, the court will entertain a motion to vacate the present trial date."

On June 20, 1973, plaintiffs moved for a rehearing of their motion for summary judgment, and on July 27, 1973, defendants moved for summary judgment. On August 15, 1973, the district court entered an order denying plaintiffs a rehearing and granting defendants' motion for summary judgment. On September 14, 1973, a judgment was entered dismissing the complaint.

This chronology is important to highlight the point that the contractual consideration of forbearance to sue relied upon in Chief Judge Chambers' opinion was never asserted to the district court and, for that matter, was not even mentioned in the briefs on appeal to this Court. In the way the case was presented to the district court, the February 15, 1971 contract between the parties was entirely executory. The proofs showed conclusively that the stock of Basic Resources, Inc. had never been delivered to plaintiffs and that plaintiffs had never executed and delivered releases of their

claims against Financial Technology, Inc. Nevertheless, the settlement agreement did provide that plaintiffs would forbear suit or other action until April 30, 1971, and this consideration was performed and is obviously a good consideration, so the agreement was not entirely executory. This point was first noted of record in this case when Chief Judge Chambers prepared his opinion.

Throughout the proceedings, defendants have contended that a contract to sell an unregistered security in violation of the Securities Act of 1933 is unenforceable as an illegal bargain. This is not the law. Frost & Co. v. Coeur d'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1941); Judson v. Buckley, 130 F.2d 174 (2nd Cir. 1942); Occidental Life Ins. Co. v. Pat Ryan & Assoc., Inc., 496 F.2d 1255 (4th Cir. 1974); Wood v. Reznik, 248 F.2d 549 (7th Cir. 1957); Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635, 640 (9th Cir. 1969).

If the foregoing recitation of the posture of the action in the trial court were all there is to the case, I would vote to affirm the summary judgment upon the long-established rule of appellate review that the appeals court will not reverse the trial court on a contention that was never presented to it. Walker v. Continental Life & Accident Company, 445 F.2d 1072 (9th Cir. 1971); Goldberg v. Weiner, 480 F.2d 1067 (9th Cir. 1973).

There is, however, another problem and that is that the judgment for defendants dismissed the 10b–5 claim as well as the Section 5 Securities Act claim. With respect to the Section 5 claim, it may well be that the out-of-pocket rule is the correct measure of damages and, if the contract to sell un-registered securities had been wholly executory, the judgment dismissing it was correct. But with respect to the 10b–5 claim, there was an obvious disputed issue of material fact under the joint pretrial statement as to what, if any, misrepresentations had been made by the sellers. This precluded summary judgment on this claim. We can find no evidence in the record that plaintiffs ever waived or abandoned this part of the amended complaint. They simply chose to press the Section 5 claim by motion for partial summary judgment because they thought liability was clear and undisputed as a matter of law.

Chief Judge Chambers' opinion shows that the measure of damages for a violation of 10b–5 may be substantially different from recovery for a violation of Section 5 of the Securities Act of 1933.

It is unnecessary to allege and prove a consummated or completed sale of securities as a condition to recovery under Section 10b of the Securities Exchange Act and SEC Rule 10b–5. Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715 (S.D.N.Y.1968); M. L. Lee & Co. v. American Cardboard & Packaging Corp., 36 F.R.D. 27 (E.D.Penn.1964); Cf. Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 890 (2nd Cir. 1972).

Inasmuch as it is my view that the summary judgment for defendants was improvidently granted on the 10b–5 cause of action, there is little reason not to reverse the judgment as a whole. After all, the rule of appellate review not to reverse on a ground not presented below is not jurisdictional but is merely a rule of practice which may be relaxed when injustice might otherwise result. Krause v. Sacramento Inn, 479 F.2d 988 (9th Cir. 1973).