**A.D.M. CORP., Plaintiff, Appellant,**

v.

**Arthur J. THOMSON, Frost Controls, Inc., Defendants, Appellees,**

v.

**GENERAL ELECTRONICS, INC., et al., Third-Party Defendants, Appellees.**

**UNITED ELECTRONICS COMPANY, Plaintiff, Appellant,**

v.

**Arthur J. THOMSON, Frost Controls, Inc., Defendants, Appellees,**

v.

**GENERAL ELECTRONICS, INC., et al., Third-Party Defendants, Appellees.**

**A.D.M. CORP., et al., Plaintiffs, Appellees,**

v.

**Arthur J. THOMSON, Frost Controls, Inc., Defendants, Third-Party Plaintiffs, Appellants,**

v.

**GENERAL ELECTRONICS, INC., et al., Third-Party Defendants, Appellees.**

Nos. 82–1618, 82–1619, 82–1705.

United States Court of Appeals, First Circuit.

Argued March 8, 1983.

Decided May 24, 1983.

Angelo M. Torrisi, New York City, for A.D.M. Corp., United Electronics Co., and General Electronics, Inc.

Michael S. Gardener, Boston, Mass., with whom Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, Mass., was on brief, for Arthur J. Thomson and Frost Controls, Inc.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, and MALETZ,* Senior Judge.

BREYER, Circuit Judge.

The plaintiffs in this case include a firm known as United Electronics Co. of Delaware (UED), which owned the stock of a company originally called Frost Controls Corp. (Frost). UED pledged its Frost stock to a lender called Factors and Note Buyers (Factors). When the loan went into default, Factors foreclosed on the collateral, offering it for sale publicly and then buying it itself. Thomson, Frost's president, then formed a new company and bought Frost's assets on behalf of that corporation. UED and Frost's successor have sued Thomson and his new company. They claim that title to Frost's assets did not pass to Thomson's company and that Thomson breached a fiduciary duty to them when he formed the new company and bought the Frost assets.

1. Whatever plaintiffs' theory, it is clear that they cannot prevail unless UED, not Factors, owned the Frost stock at the time of the sale of Frost's assets. Thus, they have tried to show that Factors' foreclosure sale (to itself) of the Frost stock was invalid. To do this, they argue on appeal that Factors, in offering the Frost stock for sale, was an "underwriter" within the meaning of the Securities Act of 1933. 15 U.S.C. § 77a *et seq.* Section 2(11) of the Act defines "underwriter" broadly to include one who "has purchased from an issuer [or from one who controls an issuer] with a view to ... the distribution of any security" as well as one who "sells for an issuer [or for one who controls an issuer]." *Id.* at § 77b(11). Factors, they claim, is one who took from, or sold for, persons (namely, UED) who controlled the "issuer" (Frost). Since the Frost stock was unregistered, they argue that the public foreclosure sale violated § 5 of the Act, *id.* at § 77e, and thus the courts should set it aside. The district court, believing that Factors was not an underwriter and that § 4(1) of the Securities Act, *id.* at § 77d(1), therefore exempted the sale, found for defendants. Plaintiffs appeal.

There is considerable support for the district court's view that a good faith pledgee who sells unregistered shares at a foreclosure sale is not an "underwriter". The Securities & Exchange Commission itself would not recommend enforcement proceedings in the circumstances present here. *See Consumers Coal Co.,* 1981 Fed.Sec.L. Rep. ¶ 76,709 (Oct. 6, 1980); *American Security Bank,* 1980 Fed.Sec.L.Rep. ¶ 76,407 (May 29, 1980); *Coventry Care, Inc.,* No-Action Letter (June 14, 1979); *Astro Manufacturing Co.,* No-Action Letter (Dec. 14, 1978); *International Electronics Corp.,* No-Action Letter (Sept. 22, 1978); *United Properties of America,* 1978 Fed.Sec.L.Rep. ¶ 81,627 (June 9, 1978); *York Terrace Lessee Venture,* No-Action Letter (Nov. 11, 1975); *Banner Publishers Inc.,* No-Action Letter (Oct. 14, 1975); *Hi-Port Industries, Inc.,* No-Action Letter (Oct. 7, 1975); *Elwill Development Ltd.,* No-Action Letter (July 15, 1974); *Narda Microwave Corp.,* No-Action Letter (Dec. 15, 1972); *Narda Microwave Corp.,* No-Action Letter (Jan. 26, 1972); *Vogue Instrument Corp.,* No-Action Letter (Dec. 17, 1971). Nonetheless, our research indicates circuit court dicta to the

---

* Of the United States Court of International Trade, sitting by designation.

contrary. *See SEC v. Guild Films Co.,* 279 F.2d 485, 489–90 (2d Cir.), *cert. denied sub nom. Santa Monica Bank v. SEC,* 364 U.S. 819, 81 S.Ct. 52, 5 L.Ed.2d 49 (1960). And this dicta, while criticized, *see, e.g., Fox v. Glickman Corp.,* 253 F.Supp. 1005, 1011–12 (S.D.N.Y.1966); 1 L. Loss, *Securities Regulation* 645–51 (2d ed. 1961); 11 H. Sowards, *Business Organizations,* § 4.01[3][b] & [c], has been frequently repeated, *see, e.g., McClure v. First National Bank of Lubbock,* 497 F.2d 490, 495 (5th Cir.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *SEC v. National Bankers Life Insurance Co.,* 334 F.Supp. 444, 456 (N.D. Tex.1971), *aff'd,* 477 F.2d 920 (5th Cir.1973); *SEC v. National Bankers Life Insurance Co.,* 324 F.Supp. 189, 194 (N.D.Tex.), *aff'd,* 448 F.2d 652 (5th Cir.1971); *In re Franchard Corp.,* 42 S.E.C. 163, 173 n. 25 (1964); *In re Associated Investors Securities, Inc.,* 41 S.E.C. 160, 165 (1962); *In re Skiatron Electronics & Television Corp.,* 40 S.E.C. 236, 245 (1960). We need not decide this controverted and potentially far-reaching issue regarding the coverage of the Securities Act, however, for plaintiffs lose even if § 5 of the Act applies.

■ The Securities Act does not by its terms automatically invalidate sales of unregistered securities in violation of § 5. Rather, when unregistered securities are sold illegally, the Act simply grants the *buyer* a remedy in § 12(1). 15 U.S.C. § 77*l* (1). Moreover, the courts have consistently held that a *seller cannot* set aside his own unlawful contract where the contract's enforcement does not threaten public policy as manifested in the Act itself. *A.C. Frost & Co. v. Coeur d'Alene Mines Corp.,* 312 U.S. 38, 44, 61 S.Ct. 414, 417, 85 L.Ed. 500 (1941) (where "it definitely appears that enforcement of a contract [violating § 5] will not be followed by injurious results, generally, at least, what the parties have agreed to ought not to be struck down"). *Compare Kaiser-Frazer Corp. v. Otis & Co.,* 195 F.2d 838, 843 (2d Cir.) (A. Hand, J.), *cert. denied,* 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664 (1952), *with Judson v. Buckley,* 130 F.2d 174, 179–80 (2d Cir.) (A. Hand, J.), *cert. denied,* 317 U.S. 679, 63 S.Ct. 161, 87 L.Ed.

545 (1942). *See also Byrnes v. Faulkner, Dawkins & Sullivan,* 550 F.2d 1303, 1313 (2d Cir.1977); *General Life of Missouri Investment Co. v. Shamburger,* 546 F.2d 774, 784 (8th Cir.1976); *Henderson v. Hayden, Stone Inc.,* 461 F.2d 1069, 1072 (5th Cir.1972). As Judge Augustus Hand pointed out, whether or not a court should refuse to enforce "contracts made in violation of the Securities Act" depends upon whether "they are calculated to damage the investing public," and "each case must be judged upon its own special facts." *Judson v. Buckley,* 130 F.2d at 180.

■ Here the facts overwhelmingly militate in favor of treating the contract as valid. The district court properly found that Factors did not enter into the pledge arrangement with an eye toward reselling the Frost shares to the public; indeed, the shares ended up in Factors' own hands. The contract is not executory; the sale is complete; all parties have relied upon its validity; and no investor has been injured by the lack of a registration statement. If there is a public policy against good faith pledgees offering collateral (consisting of unregistered shares) at a foreclosure sale to the public, it is not a strong one. As noted above, the SEC presently allows such public sales under similar circumstances, and the Uniform Commercial Code encourages public sales, *see* U.C.C. § 9–504(3). Under these circumstances, whether or not the pledgee's sale was illegal under § 5 of the Securities Act, a court should not void the sale at the pledgor's request. *A.C. Frost & Co. v. Coeur d'Alene Mines Corp., supra.*

2. The defendant Thomson appeals the district court's decision that he is not entitled to indemnification by the corporations formerly controlling Frost (including a plaintiff corporation) for his expenses in this suit. Thomson introduced evidence that one of these corporations has a by-law which provides for indemnification of "any person who may have served at this corporation's request as a director or officer of another corporation in which this corporation owns shares of stock" if that individual

incurred expenses "by reason of being or having been ... [an] officer ... of such other corporation," as long as he was not adjudged to have been negligent or to have engaged in misconduct. The other corporation apparently has a similar by-law.

 In our view, the corporations' by-laws must be read in light of the relevant law of the states in which the corporations were incorporated. *See, e.g.,* 13 *Fletcher Cyclopedia of the Law of Corporations* §§ 6045.1–6045.3 (1980). New Jersey, one of those states, specifically requires any of its corporations to "indemnify a corporate agent against expenses to the extent that such corporate agent has been successful in any proceeding" involving him "by reason of his being or having been such a corporate agent," so long as the agent "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the corporation." N.J.Stat.Ann. § 14A:3–5(2), (3), (4). A "corporate agent" is defined to include one who serves as an "officer, ... employee or agent of any other enterprise, serving as such at the request of the indemnifying corporation." *Id.* at § 14A:3–5(1)(a). Delaware, the other relevant incorporating state, has a very similar statute. *See* Del.Code Ann. tit. 8, § 145; E. Folk, *The Delaware General Corporation Law* 98–99 (1972); *Merritt-Chapman & Scott Corp. v. Wolfson,* 321 A.2d 138, 141 (Del.Super.1974) (president of subsidiary entitled to indemnification from parent).

 Thomson fits within the scope of these statutes. He was asked to manage Frost by the president of both controlling corporations. He was sued for a breach of a fiduciary duty; thus his legal expenses arise "by reason of his being" an "officer, ... employee or agent" of Frost. N.J.Stat. Ann. § 14A:3–5(1) to (4); *see Merritt-Chapman & Scott Corp. v. Wolfson,* 321 A.2d at 142. And, he was successful on the merits. Moreover, the district court's findings as to the legitimacy of the sale to Factors preclude the possibility that Thomson acted in bad faith or in a manner "opposed to the best interests of the corporation." N.J. Stat.Ann. § 14A:3–5(2) & (3). Consequent-

ly, the judgment below is reversed in so far as it disallows indemnification, and the case is remanded for a determination of the amount of an appropriate award.

In light of the additional and unnecessary work to which defendants have been put by plaintiffs' brief on appeal, double costs are awarded to defendants with respect to the plaintiffs' appeal. Ordinary costs are awarded to Thomson with respect to his own appeal. *See* Fed.R.App.Proc. 38; *Greylock Glen Corp. v. Community Savings Bank,* 656 F.2d 1, 5 (1st Cir.1981).

*The judgment of the district court is affirmed, except that the portion of the judgment dealing with the appeal of Arthur J. Thomson is reversed and remanded.*